1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DAVID C. SHONKA
Acting General Counsel
BRIAN S. SHULL
JANE M. RICCI
bshull@ftc.gov, jricci@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue N.W., CC-10232
Washington, DC  20580
P: (202) 326-3720, (202) 326-2269
F: (202) 326-3239

LAURA M. SOLIS
lsolis@ftc.gov
Federal Trade Commission
915 2nd Ave., Suite 2896
Seattle, WA 98174
P: (206) 220-4544
F: (206) 220-6366

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | **Case No. _____** |
| Plaintiff, | |
| v. | **COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |
| T-MOBILE USA, INC., a corporation, | |
| Defendant. | |

COMPLAINT
Case No. _____

1

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendant's acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), in connection with charging consumers for monthly subscriptions offered by third-party merchants without the consumers' authorization.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b), (c), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC and Federal Communications Commission have concurrent enforcement jurisdiction over mobile telephone companies' billing and collection of third-party charges for non-telecommunications services.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b) and 56(a)(2)(A).

## DEFENDANT

6.      Defendant T-Mobile USA, Inc. ("T-Mobile" or "Defendant") is a Delaware corporation with its principal place of business in Bellevue, Washington.  Defendant is a mobile

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

phone carrier and transacts or has transacted business in this district and throughout the United States. Until at least December 2013, T-Mobile has also charged consumers for other services offered and provided by third-party merchants unrelated to Defendant's common carriage mobile phone services.

## COMMERCE

7.     At all times material to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## T-MOBILE'S COURSE OF CONDUCT

### Overview

8.     Until at least December 2013, in addition to charging for phone services offered by Defendant, Defendant has charged many consumers for other services offered by third-party merchants. These purported services have included monthly subscriptions for content such as ringtones, wallpaper, and text messages providing horoscopes, flirting tips, celebrity gossip, and other similar information ("Third-Party Subscriptions"). Defendant typically has charged consumers $9.99 per month for such Third-Party Subscriptions.

9.     In numerous instances, Defendant has charged consumers for Third-Party Subscriptions that the consumers did not order or authorize, a practice known as cramming. Defendant has continued to charge consumers for Third-Party Subscriptions even after large numbers of consumers complained about unauthorized charges. Refund rates for the subscriptions were high – in some cases as high as 40%. Further, Defendant has continued to charge consumers for Third-Party Subscriptions even after industry auditor alerts, law enforcement and other legal actions, and news articles indicated that the third-party merchants were not obtaining valid authorization from consumers for the charges.

10.     Defendant has retained a portion of each charge for Third-Party Subscriptions paid by consumers, typically at least 35% of the charge and in some cases as high as 40%.

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

1    Defendant has retained a larger cut from subscriptions that generate a large percentage of

2    refunds.  Defendant has earned hundreds of millions of dollars from Third-Party Subscriptions.

3    T-Mobile's practices have caused consumers millions of dollars of injury.

4    **Defendant's Billing of Consumers for Third-Party Subscriptions**

5          11.     In television and other advertisements, and during its sales process, Defendant

6    markets its telephone and data services to consumers.  Defendant's sales representatives often

7    discuss these services only, and not purported third-party services, with consumers.  Defendant's

8    contracts make clear and prominent representations about the services it provides; information

9    about third-party services is buried in lengthy terms and conditions of its service contract.

10         12.     Defendant has not obtained authorization from consumers before charging them

11    for Third-Party Subscriptions.  Instead, the third-party merchants or billing intermediaries

12    purportedly have obtained authorization.  In many cases, however, these third parties have failed

13    to obtain authorization from consumers.

14         13.     Defendants' phone bills include charges for its own services and third-party

15    services.  For consumers who receive their bills online, Defendant has provided an online

16    summary:

17

18

19

20

21

22

23

24

25

26

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

| Service charges<br>9/15/12 – 10/14/12<br>Expand all | Account | See call records<br>PPU address | See call records<br>PPU address | Totals |
|---|---|---|---|---|
| Monthly charges | $59.98 | $10.00 | $10.00 | $79.98 |
| Classic Family 1K Talk | $59.98 | | | $59.98 |
| Enhanced Voicemail | | $0.00 | $0.00 | $0.00 |
| REQ Classic Simple 200MB Data | | $10.00 | $10.00 | $20.00 |
| Use charges | $0.00 | $3.20 | $16.39 | $19.59 |
| One-time charges | $0.00 | | | $0.00 |
| Credits & adj. | $0.00 | | | $0.00 |
| Other charges | $0.00 | $1.61 | $1.61 | $3.22 |
| Taxes & Fees | $3.70 | $0.09 | $0.09 | $3.88 |
| Total New Charges | $63.68 | $14.90 | $28.09 | $106.67 |

| | |
|---|---|
| Previous Balance | $105.48 |
| Payment received | (105.48) |
| Total Past Due (due immediately) | $0.00 |
| Amount due 11/07/12 | $106.67 |

In this summary, third-party charges, including for Third-Party Subscriptions, are included in the total for "Use Charges." If the consumer clicked to expand the field for "Use Charges," the consumer saw the following screen:

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3720

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15



16  The category "Use charges" has included such charges as text messaging, as well as "Premium

17  Services."  This screen, however, provides no explanation that "Premium Services" includes

18  third-party charges for recurring Third-Party Subscriptions, nor does this section provide any

19  additional information about the charges.

20          14.     Even on a full mobile phone bill, the third-party charges have not been

21  conspicuous.  The first page of Defendant's bills have contained a "Summary:"

22

23

24

25

26

COMPLAINT                                          Federal Trade Commission
Case No. _____                               600 Pennsylvania Avenue N.W.
                              6                     Washington, DC  20580
                                                    (202) 326-3720

| Summary | | |
|---|---|---|
| Previous Balance | $ | 98.70 |
| Pmt Rec'd - Thank You | $ | (100.00) |
| **Total Past Due** *(Credit Balance)* | $ | **(1.30)** |
| Monthly Recurring Chgs | $ | 79.99 |
| Usage Charges | $ | 10.39 |
| Other Charges | $ | 1.61 |
| Taxes & Surcharges | $ | 7.13 |
| **Total Current Charges** | $ | **99.12** |
| **Current Charges Due By** | | *12/21/12* |
| **Grand Total** | $ | **97.82** |

15.    Third-party charges are not broken out separately in the summary, but have been lumped together under the generic descriptor "Usage Charges," which may include both third-party charges and other charges, such as for texting. The "Usage Charges" line item in the summary is included in the "Total Current Charges" and "Grand Total" that Defendant represents are "due by" a specific date. Many consumers believe they are obligated to pay Defendant for all charges appearing on their phone bills.

16.    "Usage Charges" have also appeared in the "Account Service Detail" section of T-Mobile's bills. "Usage Charges" in this section has a line item for "Premium Services:"

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

| Account Service Detail | | |
|---|---|---|
| | Amount | Totals |
| Previous Balance | $   113.68 | |
| Payment Received On        7/19/12 | $   (113.68) | |
| **Monthly Recurring Charges** | | $      79.99 |
| Classic Unl Talk & Text | $    59.99 | |
| Partial charge for Name ID Free Trial  from  6/29/12 to  7/02/12 | $        - | |
| REQ Plus 2GB Data Classic | $    20.00 | |
| **Credits & Adjustments** | | $    (20.00) |
| Svc Warranty Process Fee ADJ | $   (20.00) | |
| **Usage Charges** | | $      10.19 |
| MESSAGING CHARGES | $     0.20 | |
| PREMIUM SERVICES | $     9.99 | |
| **Other Charges** | | $       1.61 |
| Communications Related | | |
| Regulatory Programs Fee* | $     1.61 | |

Although third-party charges are included in the line item "Premium Services," the Account

Service Detail section of T-Mobile's bills do not identify them as such or provide any additional

information to consumers.

17.     A description of "Usage Charges" or "Premium Services" also does not appear in

the section of the bill in which T-Mobile provides an explanation of some of the charges that

may appear on the phone bill, such as taxes and fees.

> **Additional Information:**
> **Taxes, Fees and Surcharges** - Includes government fees and taxes that we collect and are required by federal, state or local law to remit to the appropriate governmental entity (including, but not limited to, sales, use, excise, public utility, and E911). This section may also include certain fees and costs incurred by us as a result of providing service, such as universal service fees (USF). We elect to collect them in order to recover or help defray the costs we incur. These fees, and what is included in the fees, may vary by locale and may change from time to time without notice.
> **Regulatory Programs Fee** - We collect and retain this fee to recover some of the costs we incur to comply with local, state and federal governmental mandates and programs, including, but not limited to, E911, local number portability and number pooling. We may impose the fee whether or not the benefits of any or all of these mandates and programs are available to you in your location.
> **Equipment Protect by Asurion (in Puerto Rico: CAPIC)** is for the equipment repair and replacement program you may have selected. See Equipment Protection Terms and Conditions at T-Mobile.com for program details.
> **Late Fees** - May apply on past due amounts not paid by the date on page 1 of your statement. See your rate plan for details. Late fee charges are liquidated damages and are not a penalty.

18.     A breakout of the actual third-party charges has typically appeared in the middle

or towards the end of the bill, which in some instances may exceed 50 pages in length, under the

heading "Premium Services."

COMPLAINT                                              Federal Trade Commission
Case No. _____                          600 Pennsylvania Avenue N.W.
                                                                  Washington, DC  20580
                                          8                              (202) 326-3720

1

2

3

4

5

| PREMIUM SERVICES | | | | | |
|---|---|---|---|---|---|
| Date | Content Provider | Time | Description | Usage Charges | Total |
| OTHER SERVICE PROVIDER CHARGES | | | | | |
| 11/13/12 | Shaboom Media | 10:32 AM | 8868906150 BrnStorm23918 $ | 9.99 | $    9.99 |
| Other Service Provider Charges | | | | | |

6

7

8

9

10

19.     The information listed in this subsection has appeared in an abbreviated form ("8888906150BrnStorm23918") that has not provided detailed information to the consumer about the nature of the charge.  It has not explained that the charge was for a recurring Third-Party Subscription that the consumer purportedly authorized.

11

12

13

14

15

16

20.     Some consumers do not even receive mobile phone bills.  Consumers with pre-paid accounts do not receive monthly bills from Defendant; instead, these consumers pay a certain amount of money upfront for a specific number of minutes.  When an unauthorized charge for $9.99 has been charged to these consumers' accounts, Defendant has deducted $9.99 worth of minutes from their available balance.  Defendant typically has provided no notice to the consumer of the charge.

17

18

**Despite Complaints About Third-Party Subscriptions,
Defendant Has Refused To Provide Refunds And Has Continued To Charge For
Subscriptions**

19

20

21

22

23

24

25

26

21.     Some consumers who become aware of unauthorized charges have complained to Defendant that they did not authorize the charges.  Defendant's own internal documents demonstrate that consumers were complaining in increasing numbers about unauthorized charges from at least early 2012.  These documents state that there had been an increase in complaints, explain that consumers "do not know what the charges are or why they are being billed for them," and note several third-party merchants that Defendant's employees had identified as being the subject of many complaints.  Despite knowing about these complaints of unauthorized charges, Defendant did not take sufficient steps to determine whether other consumers actually

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

authorized the charges for Third-Party Subscriptions purportedly offered by the problematic third-party merchants.

22.     Furthermore, when consumers have sought refunds for unauthorized charges from Defendant, Defendant frequently has refused to provide them.  In some instances, Defendant has told consumers that there is nothing it can do about the unauthorized charges or that it would block future charges, but then failed to do so.

23.     In other instances, Defendant has instructed consumers to seek a refund directly from the third-party merchant.  At times, however, Defendant failed to provide accurate contact information for the third-party merchant.  In other instances, Defendant has refused to grant a full refund, but has granted only a partial refund.

24.     In yet other instances, Defendant has asserted that consumers authorized the charge, despite the fact that Defendant did not have records of the purported authorization. Defendant also has told consumers that they authorized the charge by not actively declining a solicitation by a third-party merchant.

25.     Even after receiving complaints that consumers did not authorize particular subscriptions, Defendant often has continued to charge other consumers for such subscriptions, without obtaining authorization from them, notifying consumers of upcoming charges, confirming charges with consumers, or including additional information on consumers' phone bills regarding the subscriptions.

**Defendant Has Charged Consumers For Third-Party Subscriptions
With High Refund Rates**

26.     When Defendant has provided refunds, it has tracked the dollar amount of refunds for each Third-Party Subscription.  It then has compared the dollar amount of refunds issued in a calendar month to the revenue charged that month for each subscription.  That ratio, given in percentage terms, is the "refund rate."  Defendant has charged consumers for subscriptions with refund rates as high as 40% in a single month.

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

27.     The refund rate likely understates the number of consumers who have been crammed.  Only those consumers who successfully identify the unauthorized charge can even attempt to dispute it.  Because consumers who are on pre-paid plans do not receive monthly bills and others have not noticed the charges in their abbreviated form on their phone bills, the refund rate does not include all consumers who did not authorize the charges.

28.     The refund rate also likely understates the number of consumers who have been crammed because only refunds granted by Defendant have counted towards the refund rate.  As explained above, in numerous instances, Defendant has told consumers that they must seek refunds directly from the third-party merchant.  Refunds obtained directly from a third-party merchant have not been counted as part of the refund rate.  At various times, Defendant also has experimented with shortening the time period for which a front-line customer service representative may refund charges (from 60 to 45 days), which also has the effect of lowering the amount of a refund given to a complaining consumer, thereby lowering the reported refund rate.

29.     Defendant has monitored the refund rates of each subscription through its Performance Improvement Plan ("PIP") – a process by which Defendant purportedly has reviewed potentially problematic Third-Party Subscriptions.  Nonetheless, Defendant has continued to charge consumers for unauthorized subscriptions.

30.     Defendant has placed Third-Party Subscriptions in its PIP process when the refund rate for the subscriptions has, among other things, exceeded 15%.  By comparison, in the credit card industry, the average chargeback rate on charges billed to credit cards is around 0.2%, and a chargeback rate of 1% for any one merchant is flagged for further investigation by credit card companies.  Moreover, under the PIP process, Defendant could continue to charge consumers for Third-Party Subscriptions for a full year before terminating the subscription.  If a subscription's refund rate has fallen below 15% in some months, Defendant has removed the subscription from the PIP process.  If the refund rate for the subscription again rises above 15%, the year-long process has been reset from the beginning.  Even if a particular subscription was

COMPLAINT
Case No. _____

11

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

terminated through the PIP process, Defendant could still charge consumers for other subscriptions offered by the same third-party merchant.

31.     Defendant continued to charge consumers for recurring Third-Party Subscriptions that were identified as having high refund rates under this PIP process.  For example, Defendant has charged consumers for purported subscriptions offered by Jesta Digital, LLC, which was recently sued by the FTC for its cramming practices.  The FTC alleged that Jesta Digital used advertisements posing as anti-virus scans to deceive consumers and sign them up for Third-Party Subscriptions without their authorization.  Consumers sought refunds from Defendant in high numbers for Third-Party Subscriptions purportedly offered by Jesta Digital and despite identifying that these subscriptions' refund rates exceeded 15% in some months, Defendant continued to charge consumers for them.

**Defendant Has Charged Consumers For**
**Third-Party Subscriptions That Were The Subject Of Industry Auditor Alerts, Lawsuits,**
**And News Articles Detailing Deceptive Practices**

32.     Industry auditors have monitored the online advertising of third-party merchants that purportedly offer Third-Party Subscriptions.  Defendant has received audits and "alerts" from these industry auditors.  The auditors' alerts have provided examples of deceptive marketing by third-party merchants to obtain consumers' phone numbers and purportedly enroll them in a monthly subscription.  Defendant has continued to charge consumers for the recurring Third-Party Subscriptions offered by those merchants identified by the auditors, including subscriptions the alerts specifically identified as failing to obtain valid authorization from the consumers.

33.     For example, one alert highlighted a purportedly free Facebook application that claimed it allowed users to see who views their Facebook profiles most frequently.  The application required users to complete a short "survey" that included entering their mobile phone number.  The application never revealed who viewed the users' Facebook profiles, but users

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

1   were charged for a Third-Party Subscription despite the application's claim of being free.

2   Defendant has continued to charge consumers for the subscription and other subscriptions

3   purportedly offered by the same third-party merchant after receiving this alert.

4         34.    Defendant has also continued to charge consumers for Third-Party Subscriptions

5   purportedly offered by third-party merchants that were the subject of news articles or law

6   enforcement or other legal actions regarding cramming practices.  For example, Defendant has

7   charged for numerous subscriptions produced by third-party merchant Wise Media, LLC.  In

8   March 2012, the *New York Times* ran an article about potential cramming by Wise Media.  In

9   October 2012, a class action complaint was filed against Wise Media for mobile cramming.

10   Defendant continued to charge consumers for Third-Party Subscriptions purportedly offered by

11   Wise Media until the FTC sued Wise Media in April 2013.  The FTC's complaint alleged that

12   Wise Media placed charges on consumers' mobile phone bills for horoscopes, flirting tips, and

13   other information without consumers' authorization.  The FTC further alleged that consumers

14   across the country were signed up for these services seemingly at random and that, even when

15   consumers sent text messages to Wise Media indicating that they did not want any services, Wise

16   Media still charged them.  At least two other mobile carriers had terminated Wise Media on their

17   networks a year before the FTC's action.

18         35.    Defendant has also charged consumers for Third-Party Subscriptions offered by

19   Tatto Inc. and its related entities.  In 2009, the Washington Attorney General entered into a

20   consent decree with Tatto for its cramming practices.  Defendant continued to charge consumers

21   for Third-Party Subscriptions offered by Tatto and its related entities for years, until shortly

22   before the FTC filed suit against Tatto and its related entities for placing unauthorized charges on

23   consumers' mobile phone bills for Third-Party Subscriptions, such as celebrity gossip text alerts.

24   The FTC alleged that Tatto and its related entities used misleading website offers to obtain valid

25   consumer phone numbers that they used to sign up consumers for Third-Party Subscriptions

26   without their knowledge.

COMPLAINT
Case No. _____

13

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

36.    Likewise, Defendant has charged consumers for purported subscriptions offered by Eye Level Holdings, LLC, d/b/a Jawa and its related corporate entities (collectively, "Jawa"). In March 2011, the Texas Attorney General sued Jawa for deceptive practices in marketing Third-Party Subscriptions.  In March 2011, another mobile carrier also sued Jawa and its principals for deceptive practices.  Defendant continued to charge consumers for Jawa's subscriptions for more than one year after the filing of these lawsuits.

## VIOLATIONS OF THE FTC ACT

37.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."  Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  Here, Defendant has represented, expressly or by implication, that the charges appearing on Defendant's phone bills were for Defendant's services authorized by the consumer, even when the charges were unauthorized charges for Third-Party Subscriptions.  Those misrepresentations are material and have caused harm to consumers.

38.    Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n). Here, Defendant has engaged in the widespread practice of charging consumers for recurring Third-Party Subscriptions without consumers' authorization for the charges, causing harm to consumers that they cannot reasonably avoid, without any remotely countervailing benefit to consumers or competition.

## COUNT I

## Deceptive Acts and Practices in Violation of Section 5 of the FTC Act

39.    In numerous instances, throughout its course of conduct described in Paragraphs 8-36 of this Complaint, Defendant has represented, directly or indirectly, expressly or by

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

implication, that charges appearing on consumers' phone bills are for Defendant's services authorized by consumers.

40.    In truth and in fact, in numerous instances in which Defendant has made the representations set forth in Paragraph 39 of this Complaint, the charges appearing on consumers' phone bills included Third-Party Subscriptions that the consumers had not authorized.  These representations are material to consumers.

41.    Defendant's representations as set forth in Paragraph 39 of this Complaint are likely to mislead reasonable consumers and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### Unfair Billing Practices in Violation of Section 5 of the FTC Act

42.    In numerous instances, Defendant has charged consumers for Third-Party Subscriptions for which consumers have not provided express, informed consent.

43.    Defendant's actions as described in Paragraph 42 have caused or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

44.    Defendant's practices as set forth in Paragraph 42 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a) and (n).

## CONSUMER INJURY

45.    Consumers have suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act.  In addition, Defendant has been unjustly enriched as a result of its unlawful acts or practices.  Absent injunctive relief by this Court, Defendant is likely to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

46.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other such relief as the Court may deem appropriate to halt and redress violations

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

1  of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable
2  jurisdiction, may award ancillary relief, including rescission or reformation of contracts,
3  restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and
4  remedy any violation of any provision of law enforced by the FTC.

### PRAYER FOR RELIEF

6     Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, § 53(b), and the
7  Court's own equitable powers, requests that the Court:

8    A. Enter such preliminary and ancillary relief as may be necessary to avert the likelihood
9      of consumer injury during the pendency of this action and to  preserve the possibility
10     of effective final relief, including, but not limited to, a temporary and preliminary
11     injunction, an evidence preservation order, and expedited discovery;

12   B. Enter a permanent injunction to prevent future violations of the FTC Act by
13     Defendant;

14   C. Award such relief as the Court finds necessary to redress injury to consumers
15     resulting from Defendant's violations of the FTC Act, including, but not limited to,
16     rescission and reformation of contracts, restitution, the refund of monies paid, and the
17     disgorgement of ill-gotten monies;

18   D. Award Plaintiff the costs of bringing this action, as well as such other and additional
19     relief as the Court may determine to be just and proper.

COMPLAINT
Case No. _____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully submitted,
David C. Shonka
Acting General Counsel

s/ Laura M. Solis

Brian S. Shull, IL Bar No. 6293797
Jane M. Ricci, DC Bar No. 983593
bshull@ftc.gov, jricci@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue N.W., CC-10232
Washington, DC  20580
P: (202) 326-3720, (202) 326-2269
F: (202) 326-3239

Laura M. Solis, WA Bar No. 36005
lsolis@ftc.gov
Federal Trade Commission
915 2nd Ave., Suite 2896
Seattle, WA 98174
P: (206) 220-4544
F: (206) 220-6366

Attorneys for Plaintiff Federal Trade
Commission

Dated: July 1, 2014

COMPLAINT
Case No. _____

17

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720