The Honorable James L. Robart

FILED ——ENTERED
LODGED ——RECEIVED

DEC 22 2014

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>T-MOBILE USA, INC.,<br><br>    Defendant. | Case No. 2:14-cv-00967-JLR<br><br>**STIPULATED [~~PROPOSED~~] ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**<br><br>***Note on Motion Calendar***: **December 19, 2014** |

Plaintiff, the Federal Trade Commission ("FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). The FTC and Defendant, T-Mobile USA, Inc. ("T-Mobile"), stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order"), without trial or final adjudication of any issue of fact or law, in order to resolve all matters in dispute in this law enforcement action by the FTC.

**THEREFORE, IT IS ORDERED** as follows:

### FINDINGS

1.      There being no objection, the Court finds that it has jurisdiction over this matter.

STIPULATED ORDER FOR PERMANENT
INJUNCTION AND MONETARY JUDGMENT
Case No. 2:14-cv-00967-JLR

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

1

2. The Complaint charges that T-Mobile participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, by including unauthorized third-party charges on the telephone bills of its mobile phone customers.

3. T-Mobile waives all jurisdictional defenses or objections related to either the FTC Act or the Communications Act of 1934, 47 U.S.C. §§ 151, et seq., solely for purposes of entry, construction, modification, and enforcement of this Order.  T-Mobile does not admit or consent to the FTC's jurisdiction for any other purposes or proceedings.

4. The parties, by and through their counsel, have agreed that entry of this Order fully and finally resolves all issues between them arising from or related to PSMS or claims of Unauthorized Third-Party Charges for all time periods up to the date of entry of this Order and precludes further litigation between the FTC and T-Mobile on the resolved issues except for purposes of enforcing or collecting on this Order.

5. T-Mobile waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney's fees.

6. T-Mobile and the FTC waive all rights to appeal or otherwise challenge or contest the validity of this Order.

7. The FTC and T-Mobile acknowledge and agree that this is a compromise settlement of disputed issues and T-Mobile neither admits nor denies the truth or falsity of any claims or allegations made in the Complaint.  Accordingly, this Order shall not be deemed or construed in any other proceeding as: (a) an admission of the truth or falsity of any claims or allegations heretofore made or any potential claims except as specifically stated in this Order; (b) an admission by T-Mobile that it has violated or breached any law, statute, regulation, term, provision, covenant, or obligation of any agreement; or (c) an acknowledgement or admission by any of the parties of any duty, obligation, fault, or liability whatsoever to any other party or to

STIPULATED ORDER FOR PERMANENT
INJUNCTION AND MONETARY JUDGMENT
Case No. 2:14-cv-00967-JLR

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

1   any third party.  This Order shall not be used as evidence or precedent in any action or

2   proceeding, except an action or proceeding to enforce or collect on this Order.

3                                              **DEFINITIONS**

4          For the purpose of this Order, the following definitions apply:

5          1.      "Account Holder" means any individual or entity who is or was responsible for

6   paying all charges associated with all lines on that individual's or entity's mobile phone account

7   with T-Mobile.

8          2.      "Bill" means a Consumer's mobile telephone bill or prepaid mobile account, as

9   applicable.

10          3.      "Block" means a restriction placed on a Consumer's account that prevents one or

11   more lines from being used to purchase Third-Party Products and from being billed for Third-

12   Party Charges on a Consumer's Bill.

13          4.      A statement is "Clear and Conspicuous" if it is disclosed in such size, color,

14   contrast, location, duration, and/or audibility that it is readily noticeable, readable,

15   understandable, and/or capable of being heard.  A statement may not contradict or be

16   inconsistent with any other information with which it is presented.  If a statement materially

17   modifies, explains, or clarifies other information with which it is presented, then the statement

18   must be presented in proximity to the information it modifies, explains, or clarifies, in a manner

19   that is readily noticeable, readable, and understandable, and not obscured in any manner.  In

20   addition:

21                  a.      An audio disclosure must be delivered in a volume and cadence sufficient

22          for a consumer to hear and comprehend it;

23                  b.      A television or internet disclosure must be of a type size, location, and

24          shade and remain on the screen for a duration sufficient for a consumer to read and

25          comprehend it based on the medium being used; and

26

STIPULATED ORDER FOR PERMANENT                         Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT                  600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR                                      Washington, DC  20580
                                         3                             (202) 326-3720

1          c.      Disclosures in a print advertisement or promotional material, including,

2     but without limitation, a point of sale display or brochure materials directed to

3     consumers, must appear in a type size, contrast, and location sufficient for a consumer to

4     read and comprehend them.

5          5.      "Collectible Consumer Debt" means the amount owed to T-Mobile by a

6     Consumer whose accounts are not paid-in-full that T-Mobile owns and may legally take legal

7     action to collect.

8          6.      "Commercial PSMS" means the use of PSMS to bill for Products.

9          7.      "Consumer" means a T-Mobile current or former customer, subscriber, or

10    purchaser of Products for which Third-Party Charges are or were placed on the Consumer's Bill

11    from T-Mobile, whether that person is responsible for paying the Bill or has a device that is

12    billed to a shared account.  "Consumer" does not include any business entity or any state,

13    federal, local, or other governmental entity, if (1) the business entity or government, and not the

14    employees or individuals working for or with that business entity or government, is solely liable

15    to T-Mobile for payment of all charges billed on that account, and (2) the ability to process

16    Third-Party Charges through that account is not available unless the business entity or

17    government affirmatively requests that certain or all mobile devices be provided the ability to

18    authorize placement of such Third-Party Charges.  Nothing in this definition of "Consumer," or

19    in any other provision of this Order, shall be read or construed to require T-Mobile (a) to share

20    customer proprietary network information ("CPNI") with any person not legally entitled to

21    receive CPNI; (b) to share customer information in such a way that it would violate any

22    applicable law or T-Mobile's privacy policy or any other applicable privacy policy, provided that

23    such policies do not impose any unnecessary or unreasonable burdens on Account Holders

24    seeking information regarding their mobile phone accounts or seeking refunds; or (c) to grant

25    more than one refund for any single Unauthorized Third-Party Charge.

26

STIPULATED ORDER FOR PERMANENT                          Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT                      600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR                                    Washington, DC  20580
                                    4                             (202) 326-3720

8.     "Consumer Redress Period" means the twelve month period of time beginning on July 1, 2014.

9.     "Effective Date" means the date this Stipulated Order for Permanent Injunction and Monetary Judgment is approved and entered by the Court.

10.    "Express Informed Consent" means an affirmative act or statement that is made by a Consumer, giving unambiguous assent to be charged for the purchase of a Third-Party Product after receiving a Clear and Conspicuous disclosure of material facts.

11.    "Participating States" means the following states and commonwealths: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, as well as the District of Columbia.

12.    "Premium Short Messaging Service" or "PSMS" means a service that distributes paid content to a Consumer using the Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") communication protocols via messages that are routed using a Short Code, resulting in a Third-Party Charge.

13.    "Product" means content and/or services that can be used on a mobile device for which charges are placed on the Consumer's Bill by T-Mobile. "Product" excludes contributions to charities, candidates for public office, political action committees, campaign committees, campaigns involving a ballot measure, or other similar contributions. "Product" also excludes co-branded and white label products where content and services are sold jointly and cooperatively by T-Mobile and another entity, where the content and/or services is placed on the subscriber's bill as a T-Mobile charge, and T-Mobile is responsible for accepting complaints,

STIPULATED ORDER FOR PERMANENT
INJUNCTION AND MONETARY JUDGMENT
Case No. 2:14-cv-00967-JLR

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

1   processing refunds, and other communications with the consumer regarding the charge.

2   "Product" also excludes handset insurance and extended warranty offerings, and collect calling

3   services.

4       14.    "Short Code" means a common code leased from the CTIA Common Short Code

5   Administration that is comprised of a set of numbers, usually 4 to 6 digits, to and from which

6   text messages can be sent and received using a mobile telephone.

7       15.    "Third Party" means an entity or entities, other than T-Mobile, that provides a

8   Product to Consumers for which billing is made through T-Mobile's Bills.

9       16.    "Third-Party Charge" means a charge for a Third-Party Product placed on a

10   Consumer's Bill.

11       17.    "Third-Party Product" means a Product provided by a Third Party.

12       18.    "T-Mobile" means T-Mobile USA, Inc., and its successors and assigns.

13       19.    "Unauthorized Third-Party Charge" means a Third-Party Charge placed on a

14   Consumer's Bill without the Consumer's Express Informed Consent.

15   **ORDER**

16   **I.    EXPRESS INFORMED CONSENT**

17       IT IS ORDERED that T-Mobile and its officers, agents, servants, and employees, and all

18   others in active concert or participation with any of them, who receive actual notice of this

19   Order, whether acting directly or indirectly, shall:

20       A.    Begin developing and implementing a system, which shall be fully implemented

21   by T-Mobile no later than March 1, 2015, to obtain Express Informed Consent before a

22   Consumer is billed for any Third-Party Charge.  The Consumer's Express Informed Consent may

23   be provided to T-Mobile or to another person or entity obligated to T-Mobile to obtain such

24   consent.  T-Mobile or other person or entity shall retain sufficient information to allow such

25   consent to be verified.  If Express Informed Consent is not directly collected by T-Mobile, T-

26   Mobile shall implement reasonable policies and practices to confirm Express Informed Consent

STIPULATED ORDER FOR PERMANENT
INJUNCTION AND MONETARY JUDGMENT
Case No. 2:14-cv-00967-JLR

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

1 will be appropriately collected and documented by the person or entity obligated to do so, and

2 shall monitor and enforce those policies and practices to confirm Express Informed Consent is

3 appropriately collected and documented, and where Express Informed Consent has not been

4 appropriately collected and documented, shall require remedial action (which may include, for

5 example, suspension, proactive credits, or retraining) or cease billing for such charges.  While

6 the system described by this Paragraph is being developed and implemented, T-Mobile shall take

7 reasonable steps to obtain Express Informed Consent before a Consumer is billed for any Third-

8 Party Charge.  *Provided, however*, for purposes of this Section, for charges incurred through

9 operating system storefronts, such reasonable policies and practices may, for example, consist of

10 T-Mobile or its agents making a statistically valid random sample of purchases to demonstrate

11 whether the storefront is collecting Express Informed Consent consistent with this Order; and

12   B.  Beginning no later than April 1, 2015, implement a system whereby the

13 Consumer (and, for multiline accounts, the Account Holder, if designated) will be sent a

14 purchase confirmation, separate from the Bill, of every Third-Party Charge, including recurring

15 charges, that will appear on his or her Bill.  Any such purchase confirmation shall be sent within

16 a reasonable period of time following the time a Third-Party Product is purchased or the

17 recurrence of a Third-Party Charge, and shall identify Blocking options that T-Mobile makes

18 available to Consumers and/or provide access to such information.  For multiline accounts, T-

19 Mobile may provide the Account Holder the option to elect not to receive such purchase

20 confirmations.

21    **II.**  **REQUIRED DISCLOSURES**

22   IT IS FURTHER ORDERED that T-Mobile shall, beginning no later than April 1, 2015,

23 provide a Clear and Conspicuous disclosure about Third-Party Charges and Blocking options in

24 informational material provided at or near the time of subscribing to service, to the extent Third-

25 Party Charges are offered and available with the service, and which is provided in a context

26 separate from the actual subscriber agreement documents.  Such disclosure shall include or

STIPULATED ORDER FOR PERMANENT     Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT   600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR       Washington, DC  20580
         (202) 326-3720

1  provide access to a description of Third-Party Charges, how Third-Party Charges appear on

2  Bills, and options available to Consumers to Block Third-Party Charges.  Consumers shall not

3  incur any data or text charges for receiving or accessing the information discussed in this

4  Section.

### III.      REFUND PRACTICES

6      IT IS FURTHER ORDERED that T-Mobile shall:

7      A.      For at least 6 years from the Effective Date, conduct a training program with its

8  customer service representatives, at least annually, to administer the requirements of this Order.

9  To the extent that T-Mobile no longer permits Third-Party Charges on Consumers' Bills, T-

10  Mobile will conduct one training program within three months of such cessation and will have

11  no further obligation to conduct training programs under this Section so long as T-Mobile does

12  not permit Third-Party Charges on Consumers' Bills; and

13      B.      After a consumer disputes a Third-Party Charge within three months of the last

14  charge for a particular Product:

15          1.      Provide the Consumer with access to a customer service representative

16      who has access to the Consumer's account information for at least the prior 12 months.

17      For Newly Acquired Entities as defined in Section IV, if such information is not

18      available, T-Mobile shall have 12 months to come into compliance with respect to such

19      entities, and, while coming into compliance, respond to the Consumer's inquiry within 10

20      days using any available information;

21          2.      For current customers, offer the Consumer the opportunity to Block future

22      Third-Party Charges;

23          3.      Commence and complete an investigation that is reasonably calculated to

24      determine whether the Consumer gave Express Informed Consent to the disputed

25      charge(s), including charges for the same Product that were billed more than three

26      months before the consumer dispute.  T-Mobile shall inform the Consumer that, during

STIPULATED ORDER FOR PERMANENT
INJUNCTION AND MONETARY JUDGMENT
Case No. 2:14-cv-00967-JLR

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

the investigation, the Consumer is not obligated to pay the disputed charge(s), and that nonpayment of such charge(s) will not result in interest accrual or phone service termination or deduction of pre-paid minutes.

a)     If T-Mobile reasonably concludes after the investigation that the Consumer gave Express, Informed Consent to the disputed charge(s), T-Mobile shall promptly provide the Consumer with the basis for its conclusion, including providing the Consumer with any documentary or other evidence considered, and the name and contact information of the Third Party that initiated the Third-Party Charge.

b)     If T-Mobile reasonably concludes after the investigation that the Consumer did not give Express Informed Consent to the disputed charge(s), T-Mobile shall promptly provide the Consumer with a full refund or credit of the disputed charge(s), as long as the Consumer makes the claim within three months of being billed for the last charge for the particular Product at issue.

*Provided, however,* that T-Mobile shall not be required to conduct such an investigation if it promptly refunds the Consumer the full amount of the disputed charge(s).

4.     Be prohibited from requiring the Consumer to first contact the Third Party in order to receive a refund or credit of any claimed Unauthorized Third-Party Charge, although this Subsection does not prohibit asking the Consumer if he or she has contacted the Third Party and/or if the Consumer has already received a credit or refund from the Third Party for some or all of the claimed Unauthorized Third-Party Charge.

## IV.    NEWLY ACQUIRED ENTITIES

For entities T-Mobile acquires in the future ("Newly Acquired Entities"), except as provided in Section III.B., T-Mobile shall have a reasonable period of time, which in no event shall exceed 6 months, in which to bring said entities into compliance with this Order. During the

STIPULATED ORDER FOR PERMANENT
INJUNCTION AND MONETARY JUDGMENT
Case No. 2:14-cv-00967-JLR

1   6 month period, T-Mobile shall take reasonable steps to obtain Express Informed Consent before

2   a Consumer is billed for any Third-Party Charge.

3                              **V.     CONSUMER REDRESS**

4          IT IS FURTHER ORDERED that T-Mobile shall provide full refunds to Consumers who

5   have been charged by T-Mobile for unauthorized Commercial PSMS charges from June 1, 2010

6   through the Effective Date of this Order.  T-Mobile will provide full refunds as follows:

7          A.     T-Mobile shall provide prompt refunds to Consumers for the full amount of any

8   unauthorized Commercial PSMS charge that has not already been fully refunded according to T-

9   Mobile's billing records.  T-Mobile shall refund no less than $90 million (the "PSMS Charges

10  Refund Amount") for unauthorized Commercial PSMS charges during the Consumer Redress

11  Period, to be monitored by the FTC.  T-Mobile may include in the PSMS Charges Refund

12  Amount any refunds granted by T-Mobile (a) since June 10, 2014, or (b) as a result of claims

13  made within the Consumer Redress Period, even if T-Mobile pays the refunds outside the

14  Consumer Redress Period.  If T-Mobile refunds less than $90 million, after applying the credits

15  specified in Sections V.C and V.D, it shall remit the balance to the FTC, so the FTC can make

16  additional redress, disgorgement, or consumer informational remedies pursuant to Section V.E.

17  For purposes of this Section V, a refund under Section V.B.3.a must be provided within 60 days

18  of receiving a complete and valid claim form for a refund of an unauthorized Commercial PSMS

19  charge.

20         B.     To effectuate Section V.A of this Order:

21                1.     During the Consumer Redress Period, T-Mobile shall provide notice of the

22         right to obtain refunds for unauthorized Commercial PSMS charges to Consumers who

23         have been charged for a Commercial PSMS charge that has not already been fully

24         refunded according to T-Mobile's billing records.  For current customers, T-Mobile shall

25         provide notice using the medium that it uses to bill the Consumers in two consecutive

26         billing cycles during the Consumer Redress Period.  *Provided, however,* that if the notice

STIPULATED ORDER FOR PERMANENT                          Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT                    600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR                                    Washington, DC  20580
                                        10                            (202) 326-3720

accompanies a Consumer's Bill, the notice shall be on a different color of paper than the Consumer's Bill.  For former customers, T-Mobile shall provide the notice within the Consumer Redress Period by sending it via first-class mail to the Consumer's last known address and provide a second notice by email to the Consumer's last known email address.  Prior to mailing notices, T-Mobile shall update the addresses via the Postal Service's National Change of Address database.  The notices shall provide the link to an online form that Consumers can use to apply for refunds; *provided, however,* that at the request of a Consumer, a hard copy form must be provided without cost to the Consumer;

2.      T-Mobile shall promptly provide, upon request by a Consumer, the total amount of Commercial PSMS charges charged to the Consumer that have not been fully refunded by T-Mobile or a Third Party, the dates of such charges, and the Third Party initiating such charges;

3.      Upon a Consumer's affirmation that the Consumer was charged for unauthorized Commercial PSMS charges, T-Mobile shall provide prompt refunds to the Consumer for the unauthorized Commercial PSMS charges as follows:

a)      For Consumers with active accounts, T-Mobile shall provide prompt refunds by a credit to the Consumer's mobile account; *provided, however,* that T-Mobile shall Clearly and Conspicuously disclose to Consumers that in the event they close their account with T-Mobile prior to T-Mobile issuing a credit, they will receive a prompt refund by check.  For Consumers with inactive accounts that are paid in full, T-Mobile shall provide prompt refunds by check.  The determination of whether a Consumer's mobile account is active or inactive shall be made at the time the refund is issued;

b)      For Consumers whose inactive accounts are not paid in full, T-Mobile shall have the option to pay by check or to promptly reduce the outstanding balance of the account by the total amount of unauthorized

STIPULATED ORDER FOR PERMANENT
INJUNCTION AND MONETARY JUDGMENT
Case No. 2:14-cv-00967-JLR

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

1    Commercial PSMS charges as identified by the Consumer that have not been fully

2    refunded according to T-Mobile's billing records, provided that any such balance

3    constitutes Collectible Consumer Debt.  Any reduction to an outstanding balance

4    pursuant to this subparagraph shall be counted towards the amount of permissible

5    credits against the remaining balance in Section V.D.  If the total amount of

6    unauthorized Commercial PSMS charges identified by the Consumer on the claim

7    form exceeds the outstanding balance of the Consumer's account, T-Mobile shall

8    promptly provide the Consumer a check in the amount of the excess.

9        4.    T-Mobile shall ensure that Consumers obtain refunds of unauthorized

10   Commercial PSMS charges through a single claim form.  Although T-Mobile may list

11   each Commercial PSMS charge separately on the claim form, Consumers must be

12   allowed to challenge all Commercial PSMS charges at once, such  as by marking a single

13   box.  T-Mobile shall not require Consumers to submit any documentation other than a

14   complete and valid claim form (though T-Mobile may give Consumers the option to

15   submit documentation to support claims for unauthorized Commercial PSMS charges not

16   reflected on reports provided to the Consumer pursuant to Section V.B.2), waive any

17   rights, or impose any unnecessary or unreasonable burdens on Consumers seeking

18   refunds.  *Provided, however*, for any unauthorized Commercial PSMS charges that T-

19   Mobile fully refunds to, or credits against the debt of, a Consumer, the Consumer's claim

20   against T-Mobile with respect to the fully refunded charges will be deemed satisfied.

21       5.    Within 30 days of the Effective Date, T-Mobile shall notify all Consumers

22   that it has identified as having visited T-Mobile's redress website before August 31,

23   2014, but failed to submit a claim form, and for whom T-Mobile captured contact

24   information during the Consumer's visit to the website, that improvements have been

25   made to the claims process and notifying the Consumers of their right to obtain full

26

STIPULATED ORDER FOR PERMANENT                    Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT              600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR                              Washington, DC  20580
(202) 326-3720

1   refunds for unauthorized Commercial PSMS charges that have not already been fully

2   refunded according to T-Mobile's billing records.

3       C.    If after the expiration of the Consumer Redress Period, T-Mobile has failed to

4   refund the full PSMS Charges Refund Amount pursuant to Sections V.A and V.B, T-Mobile may

5   apply towards the PSMS Charges Refund Amount up to $22.5 million of any fees, costs,

6   penalties, or other payments to any other federal, state, or local government entity that, within 12

7   months of the Effective Date, are paid by T-Mobile as a result of any agreement or order related

8   to unauthorized Commercial PSMS charges with such federal, state, or local government entity,

9   or as the result of a court order related to unauthorized Commercial PSMS charges.

10       D.    If, after applying any fees, costs, penalties, or other payments pursuant to Section

11   V.C, the PSMS Charges Refund Amount is not reached, T-Mobile may, at its discretion, apply as

12   credit towards the balance within 90 days of the end of the Consumer Redress Period (a) any

13   refunds granted to Consumers who were charged a Commercial PSMS charge for a good or

14   service offered by a Third Party that has been the subject of a federal or state law enforcement

15   action and for which a full refund has not yet been provided according to T-Mobile's billing

16   records; and/or (b) any reductions in outstanding balances of inactive accounts of Consumers up

17   to a total of $37.5 million, provided that any such balance constitutes Collectible Consumer Debt

18   and any such reduction shall not exceed the total amount of Commercial PSMS charges charged

19   to a Consumer's account that have not been fully refunded according to T-Mobile's billing

20   records.  Any outstanding balance on the PSMS Charges Refund Amount after application of the

21   credits in this Subparagraph shall be remitted to the FTC within 105 days of the end of the

22   Consumer Redress Period and shall not constitute a penalty.

23       E.    All money paid to the FTC pursuant to this Order shall be deposited into a fund

24   administered by the FTC or its designee to be used for equitable relief, including consumer

25   redress and any attendant expenses for the administration of any redress fund.  If the FTC, in

26   consultation with the executive committee of the Attorneys General of the Participating States

STIPULATED ORDER FOR PERMANENT
INJUNCTION AND MONETARY JUDGMENT
Case No. 2:14-cv-00967-JLR

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

1    and the Federal Communications Commission, determines further redress is no longer

2    practicable, the FTC may apply all remaining funds for such other equitable relief (including

3    consumer information remedies) as it determines to be reasonably related to T-Mobile's practices

4    alleged in the Complaint.  Any funds not used for redress or other equitable relief such as

5    consumer information remedies, shall be deposited to the U.S. Treasury as disgorgement as

6    equitable relief, or transferred to the Attorneys General of the Participating States to be used for

7    proper purposes as set forth in their assurances of voluntary compliance, consent decrees, and

8    court orders with T-Mobile.

9         1.     If the FTC determines to use the fund referenced in Section V.E for further

10   consumer redress, it shall engage a settlement administrator (the "Settlement

11   Administrator"), which shall not be a governmental entity, to administer this redress

12   program.

13        2.     T-Mobile agrees to deliver to the Settlement Administrator the records

14   specified in Section V.E.3 below, in the format reasonably requested by the FTC or the

15   Settlement Administrator, no later than 90 days after the date the FTC or Settlement

16   Administrator provides T-Mobile with the necessary information regarding how the data

17   needs to be formatted and delivered.  Should the Settlement Administrator or the FTC

18   request additional Consumer information necessary to effectuate redress and this

19   information is readily available to T-Mobile at no material expense, T-Mobile agrees to

20   provide the information to the Settlement Administrator within 60 days of any subsequent

21   written request from a representative of the FTC, or from the Settlement Administrator.

22   To the extent T-Mobile cannot deliver the information in the format requested due to

23   technological reasons, the parties will work together to develop a format upon which the

24   information can be delivered.

25        3.     For the purposes of effecting this Order and to protect Consumers from

26   fraud in accordance with 47 U.S.C.§ 222(d), T-Mobile agrees to provide the Settlement

STIPULATED ORDER FOR PERMANENT           Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT    600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR                 Washington, DC  20580
                  14                 (202) 326-3720

1    Administrator the records used by the company that administered T-Mobile's refund

2    program under this Section V, which includes records for each Consumer whom T-

3    Mobile billed for Commercial PSMS charges from June 1, 2010 through the cessation of

4    billing for Commercial PSMS charges.  T-Mobile represents this information included

5    the following, to the extent reasonably available:  First Name; Middle Name; Last Name;

6    Alias-Surname; postal address records; e-mail address; all telephone numbers; mobile

7    Billing Account Number ("BAN"); a designation indicating whether the Consumer is a

8    current or former customer as of the date the information was collected; a list of all

9    unrefunded Commercial PSMS charges charged to each Consumer's mobile phone

10   account, including the month and year of the charges, the amounts charged, and the Third

11   Party responsible for each Commercial PSMS charge; and records of refunds provided

12   through the redress program described in this Section V.  T-Mobile agrees the Settlement

13   Administrator shall instruct T-Mobile to submit the information to it in a secure,

14   encrypted format, and T-Mobile agrees to submit the information in a secure, encrypted

15   format.

16          4.      The FTC may engage a third-party independent auditor ("Auditor"), which

17   shall not be a governmental entity, to review and report on the Settlement Administrator's

18   performance of its duties under this Order.  The Settlement Administrator shall allow for

19   an independent review of the Settlement Administrator's work.  The cost of the review by

20   the Auditor shall be paid out of the fund referenced in this Section V.E established to

21   administer redress.  T-Mobile agrees to provide all the records described in Section V.E.3

22   to the Auditor.  Upon the Auditor's request, the Settlement Administrator may share any

23   Consumer information with the Auditor.

24          5.      In accordance with the Electronic Communications Privacy Act, 18 U.S.C.

25   § 2702(c)(6), neither the Settlement Administrator nor the Auditor shall share with any

26   representative of the FTC, or any other governmental entity, the information provided by

STIPULATED ORDER FOR PERMANENT                Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT              600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR                    Washington, DC  20580
                                15            (202) 326-3720

1    T-Mobile unless Consumers' personally identifiable information, such as name, address,

2    telephone, e-mail address, or other unique identifier that could permit the information

3    shared to be associated with the relevant subscriber or customer of T-Mobile, is redacted.

4    At any time during the redress program, the Settlement Administrator also may share

5    with a representative of the FTC the information provided by T-Mobile in aggregate

6    form.  Aggregate form includes, *inter alia*, the total number of Consumers, by state,

7    potentially entitled to redress and the amount of such potential redress, the total number

8    of Consumers, by state, who have received redress and the amount of such redress, and

9    the total amount of redress by state.  Aggregate form must not include any information

10   that includes Consumers' personally identifiable information.  The Settlement

11   Administrator shall at no time be an agent of the FTC, or any other governmental entity,

12   for purposes of the possession, custody, or control of such information.

13            6.       The Settlement Administrator and Auditor shall operate in accordance

14   with, and shall be deemed for purposes of carrying out this Order to be subject to, the

15   information security, data breach notification and confidentiality standards and

16   requirements of the FTC's Standards for Safeguarding Customer Information Rule, 16

17   C.F.R. Part 314, the FTC's Disposal of Consumer Report Information and Records Rule,

18   16 C.F.R. Part 682, the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and §§ 6821-

19   6827 , and the Telecommunications Act, 47 U.S.C. § 222, and 47 C.F.R. §§ 64.2010-

20   2011.  The Settlement Administrator and Auditor shall destroy all records associated with

21   the redress program following notification by a representative of the FTC and shall

22   certify to T-Mobile that all such records have been destroyed.

23   F.       If T-Mobile has reported to any consumer reporting agency an outstanding

24   balance of a Consumer's inactive account, T-Mobile shall furnish correct account information to

25   that consumer reporting agency or cease reporting the account within 30 days of any reduction in

26   the outstanding balance of the account pursuant to Sections V.B.3.b or V.D of this Order.

STIPULATED ORDER FOR PERMANENT                              Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT                   600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR                                          Washington, DC  20580
(202) 326-3720

G.      Within 120 days of the end of the Consumer Redress Period, T-Mobile shall
provide the FTC with records sufficient to show the notification provided by T-Mobile to
Account Holders of the right to full refunds of unauthorized Commercial PSMS charges, the
refunds requested and paid to Account Holders during the Consumer Redress Period, any
payments to federal, state, or local government entities that T-Mobile applied to the PSMS
Charges Refund Amount pursuant to Section V.C, that all outstanding balances of inactive
accounts that were reduced pursuant to Sections V.B.3.b or V.D constituted Collectible
Consumer Debt, that any notifications required by Section V.F have been made, and any refund
requests that were denied due to a prior full refund or any other reason.  All such records, to the
extent they pertain to any customer or subscriber of T-Mobile and are protected by the Electronic
Communications Privacy Act, 18 U.S.C.§ 2703, shall be produced in a manner and form in
which Consumers' personally identifiable information, such as name, address, telephone, e-mail
address, or other unique identifier that could permit the information shared to be associated with
the relevant subscriber or customer of T-Mobile, is redacted.

H.      T-Mobile relinquishes dominion and all legal and equitable right, title, and
interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

I.      The facts alleged in the Complaint will be taken as true, without further proof,
only in the event of a non-dischargeability complaint in any bankruptcy case.

J.      The facts alleged in the Complaint establish all elements necessary to sustain an
action by the FTC pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C.
§ 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

K.      T-Mobile acknowledges that its Taxpayer Identification Numbers, which T-
Mobile must submit to the FTC, may be used for collecting and reporting on any delinquent
amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

STIPULATED ORDER FOR PERMANENT                          Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT                  600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR                                      Washington, DC  20580
                                    17                                  (202) 326-3720

## VI.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that T-Mobile obtain acknowledgments of receipt of this

Order:

A.   T-Mobile, within 7 days of entry of this Order, must submit to the FTC an

acknowledgment of receipt of this Order.

B.   Within 7 days of entry of this Order, T-Mobile must deliver a copy of this Order

to all officers and directors of T-Mobile.

## VII.   COMPLIANCE REPORTING

IT IS FURTHER ORDERED that T-Mobile make timely submissions to the FTC:

A.   One year after entry of this Order, T-Mobile must submit a compliance report.  T-

Mobile must:  (i) identify the primary physical, postal, and email address and telephone number

of designated points of contact, which representatives of the FTC may use to communicate with

T-Mobile, and will update this information as necessary; and (ii) provide a certification from a

senior corporate manager with the requisite corporate and organizational authority that T-Mobile

has established and implemented the requirements of this Order and is not aware of any material

noncompliance that has not been (a) corrected or (b) disclosed to the FTC.  The certification will

be based on the personal knowledge of the senior corporate manager or the personal knowledge

of T-Mobile subject matter experts upon whom the senior corporate manager reasonably relies in

making the certification.

B.   For a period of one year after April 1, 2015, and upon request for five years

thereafter, T-Mobile shall provide a report to the FTC every 3 months ("Quarterly Reports")

documenting its compliance with the requirements of Section III.B (and its subsections).  This

documentation shall include:

1.   The total number of Consumer claims for Unauthorized Third-Party

Charges for which T-Mobile has demonstrated that the purchasers provided Express

Informed Consent;

STIPULATED ORDER FOR PERMANENT
INJUNCTION AND MONETARY JUDGMENT
Case No. 2:14-cv-00967-JLR

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

2.      All refunds/credits provided, in dollars, pursuant to Section III.B.3, above;

3.      For the refunds/credits identified in the foregoing Subsections 1 and 2, the Third-Party Product, the Third Party, and the entity responsible to T-Mobile for ensuring Express Informed Consent from the Consumer if different than T-Mobile; and

4.      To the extent permitted by any applicable law, a description of any remedial action taken by T-Mobile against Third Parties for Unauthorized Third-Party Charges, including, but not limited to, any actions taken to limit or terminate a Third Party's ability to place Third-Party Charges on a Consumer's Bill.  The description of any remedial action provided under this subsection shall include:  (i) the name and contact information of such Third Party, (ii) a description of the Product in connection with which the remedial action was taken, (iii) an indication of whether the Product was suspended or terminated (and if the Product was suspended, T-Mobile shall include the date or conditions for reinstatement), and (iv) the reason for the remedial action.

C.      Information in Quarterly Reports shall be presented on a national basis and provided electronically in a format to be agreed to by the parties.  Quarterly Reports shall be provided within 30 days of the end of each calendar quarter.

D.      To the extent T-Mobile believes that Quarterly Reports submitted pursuant to this Section constitute confidential commercial and financial information that is proprietary and sensitive, T-Mobile may produce such Quarterly Reports pursuant to confidentiality provisions in 16 C.F.R. §§ 2.33 and 4.9(c) and mark them as confidential.

E.      T-Mobile must submit to the FTC notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against T-Mobile within 14 days of its filing.

F.      Unless otherwise directed by an FTC representative in writing, all submissions to the FTC pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer

STIPULATED ORDER FOR PERMANENT
INJUNCTION AND MONETARY JUDGMENT
Case No. 2:14-cv-00967-JLR

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3720

19

1   Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.

2   The subject line must begin:  FTC v. T-Mobile USA, Inc. (X140053).

3          G.      T-Mobile's submission of reports to the FTC as required by this Order, and its

4   adherence to other aspects of this Order, shall not under any circumstances be taken as any

5   admission of the FTC's jurisdiction over T-Mobile for any other purpose, in any other context or

6   under any other set of facts.

7                          **VIII.      RECORDKEEPING**

8          IT IS FURTHER ORDERED that T-Mobile must create and retain the following records:

9          A.      No later than March 1, 2015, T-Mobile shall implement a process to track (i) all

10  Consumer claims that a Third-Party Charge was unauthorized for which T-Mobile demonstrated

11  that purchaser provided Express Informed Consent, and (ii) refunds/credits provided pursuant to

12  Section III.B.3.

13         B.      No later than March 1, 2015, T-Mobile shall implement systems that allow it to

14  maintain the information described in Section VIII.A.  Each record created pursuant to this

15  Section shall be maintained for a period of 6 years from the date of its creation.  T-Mobile's

16  obligation to maintain records for 6 years from the date of their creation shall continue for 20

17  years after entry of the Order.

18         C.      For 20 years after the entry of this Order, T-Mobile must create accounting

19  records showing the revenues associated with all Third- Party Charges and retain such records

20  for 5 years from the date of their creation.  If such records are requested by the FTC those

21  records may be produced by T-Mobile pursuant to the confidentiality provisions in 16 C.F.R. §§

22  2.33 and 4.9(c) and marked by T-Mobile as confidential

23                          **IX.      COMPLIANCE MONITORING**

24         IT IS FURTHER ORDERED that, for the purpose of monitoring T-Mobile's compliance

25  with this Order:

26

STIPULATED ORDER FOR PERMANENT                          Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT              600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR                                       Washington, DC  20580
                                       20                               (202) 326-3720

1    A.    The FTC is authorized to obtain discovery, without further leave of court, using

2    any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including

3    telephonic depositions), 31, 33, 34, 36, 45, and 69.

4    B.    Nothing in this Order limits the FTC's lawful use of compulsory process,

5    pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.  T-Mobile may assert any

6    and all defenses, rights, or privileges available to it.

7                    **X.        RETENTION OF JURISDICTION**

8          IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for

9    purposes of construction, modification, and enforcement of this Order.

10

11   SO ORDERED this 22ⁿᵈ day of December     , 2014.

12

13          _____

14          UNITED STATES DISTRICT JUDGE

15   **SO STIPULATED AND AGREED:**

16   **FOR PLAINTIFF:**

17

18   **FEDERAL TRADE COMMISSION**

19   _____     Date: 12-18-14

20   BRIAN S. SHULL
     JANE M. RICCI

21   Federal Trade Commission
     600 Pennsylvania Avenue N.W., CC-10232

22   Washington, DC  20580
     bshull@ftc.gov, jricci@ftc.gov

23   P: (202) 326-3720, (202) 326-2269
     F: (202) 326-3239

24   COUNSEL FOR FEDERAL TRADE COMMISSION

25

26

STIPULATED ORDER FOR PERMANENT               Federal Trade Commission
INJUNCTION AND MONETARY JUDGMENT          600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-00967-JLR                        Washington, DC  20580
                          21                            (202) 326-3720

1

**FOR T-MOBILE USA, INC.:**

2

_Steven P. Caplow_ Date: _12/17/14_

3

STEPHEN M. RUMMAGE

4

STEVEN P. CAPLOW
Davis Wright Tremaine LLP

5

1201 Third Avenue, Suite 2200
Seattle, WA 98101

6

steverummage@dwt.com
P: (206) 757-8136

7

F: (206) 757-7136

8

COUNSEL FOR T-MOBILE USA, INC.

9

_David Miller_ Date: _12/17/14_

10

DAVID A. MILLER

11

Executive Vice President and Chief Legal Officer
T-MOBILE USA, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

| | |
|---|---|
| STIPULATED ORDER FOR PERMANENT<br>INJUNCTION AND MONETARY JUDGMENT<br>Case No. 2:14-cv-00967-JLR<br><br>22 | Federal Trade Commission<br>600 Pennsylvania Avenue N.W.<br>Washington, DC  20580<br>(202) 326-3720 |